IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 VICTORIA L. FRAWLEY, )
 )
 Respondent, )
 WD84025
 v. )
 )
 OPINION FILED:
 )
 May 18, 2021
 MATTHEW J. FRAWLEY, )
 )
 Appellant. )

 Appeal from the Circuit Court of Platte County, Missouri
 The Honorable W. Ann Hansbrough, Judge

 Before Division Two: Mark D. Pfeiffer, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Mr. Matthew J. Frawley, a licensed attorney who is acting pro se, appeals from contempt

rulings entered by the Circuit Court of Platte County, Missouri (“circuit court”), finding him in

contempt of court for failing to comply with the child support provisions of both the Judgment and

Decree for Dissolution of Marriage dissolving his marriage to Ms. Victoria Lynn Frawley

(“Dissolution Judgment”) and the circuit court’s subsequent judgment modifying the Dissolution

Judgment (“Modification Judgment”), which contempt rulings were subsequently enforced.

Mr. Frawley’s appeal also improperly attempts to resurrect issues that have been finally resolved
by our previous rulings in Frawley v. Frawley, 597 S.W.3d 742 (Mo. App. W.D. 2020)

(“Frawley I”), and Frawley v. Frawley, 608 S.W.3d 771 (Mo. App. W.D. 2020) (“Frawley II”).

 Mr. Frawley (“Father”) asserts four points on appeal. In Point I, Father asserts that, after

he filed motions for change of judge, the circuit court judge erred in not recusing herself before

entering the Modification Judgment. In Point II, Father asserts that the circuit court erred in

modifying the visitation schedule in the Modification Judgment and finding that unsupervised

parenting time with Father would endanger the children’s physical health or impair their emotional

development in that there was no expert testimony to support that finding. In Point III, Father

argues that the circuit court erred in finding that the guardian ad litem performed good and valuable

legal services in the proceedings leading to the Modification Judgment and in ordering Father to

pay two-thirds of the guardian ad litem’s fees. In Point IV, Father contends that the circuit court

erred in finding that he was in contempt of the circuit court’s judgments because there was no

substantial evidence that he willfully refused to comply with the judgment provisions related to

reimbursement for the children’s extracurricular and medical expenses. We affirm.

 Factual and Procedural Background1

 Father and Ms. Frawley (“Mother”) were married in 2008 and had two children together.

On March 7, 2013, the circuit court entered its Dissolution Judgment. Pursuant to the Dissolution

Judgment, Mother was granted sole physical and sole legal custody of the parties’ two minor

children. Father was awarded visitation “at all reasonable times and places to be determined by

the Mother in light of Father’s psychological difficulties.” Regarding financial support, the

Dissolution Judgment ordered Father to pay child support in the amount of $505 per month. While

 1
 “We view the evidence and permissible inferences therefrom in the light most favorable to the trial court’s
judgment and disregard all contrary evidence and inferences.” Navarro v. Navarro, 504 S.W.3d 167, 172 (Mo. App.
W.D. 2016) (internal quotation marks omitted).

 2
the Dissolution Judgment ordered Mother to carry medical insurance for the minor children,

non-covered costs were to be borne by both parents:

 Mother should pay 50% and Father should pay 50% of the cost, expense, or charges
 for all . . . health care expenses incurred by or on behalf of the child to the extent
 that the “medical costs” are actually incurred and are not fully covered, no[t] fully
 paid, or not reimbursed by the health benefit plan.

The Dissolution Judgment provided a mechanism for paying non-covered costs, having the parent

obtaining the non-covered care provide a copy of each bill to the other parent, submit the covered

expenses to the insurer for payment, and send the other parent a copy of the insurer’s Explanation

of Benefits showing the amount paid or denied. With regard to educational expenses, the

Dissolution Judgment ordered each parent to “pay one-half (50%) of the children’s extracurricular

activities, including but not limited to: enrollment fees, dues, uniforms, clothing, shoes, etc.”

 In 2016, Father filed a motion to modify the Dissolution Judgment as to child custody and

visitation. In Father’s motion, he requested that the court modify Mother’s award of sole legal and

sole physical custody to award the parties joint legal and joint physical custody and to review his

child support obligation. Mother filed a counter-motion to modify, seeking to increase child

support.

 In January 2017, while the motions to modify were pending, Mother filed a motion asking

the circuit court to cite Father “for contempt for his willful failure and refusal to comply with the

ordered child support and unpaid medical bills of the minor children” in compliance with the

Dissolution Judgment. Father filed an answer to Mother’s contempt motion, in which he denied

that he was responsible for the amounts Mother alleged. The circuit court entered an order

directing Father to appear before the court on April 18, 2017, to show cause why he should not be

held in contempt. The show-cause hearing was later continued to the date of trial on the motions

to modify.

 3
 A bench trial was held on the motions to modify and Mother’s motion for contempt on

December 11, 2017, February 15, 2018, March 7, 2018, August 13, 2018, November 19, 2018,

and November 26, 2018. In July 2018 and November 2018, Father filed motions requesting that

the circuit court judge recuse herself based upon adverse rulings the circuit court made during trial.

Both motions were denied.

 The circuit court entered its Modification Judgment on January 3, 2019. In its Modification

Judgment, the circuit court declined to modify its award of sole legal and physical custody to

Mother but did modify Father’s visitation to restrict his visits to specific periods of supervised

visitation. All decisions related to the athletic and social activities of the minor children were

Mother’s sole responsibility, but the payment of expenses associated with those activities were

ordered to be “equally shared between the parties.” All health care decisions for the minor children

were Mother’s sole responsibility, but non-covered health care expenses were to be “equally

shared between Mother and Father.” The Modification Judgment reiterated the same mechanism

for payment of non-covered costs as in the Dissolution Judgment. The circuit court increased

Father’s child support obligation to $554 per month because Father’s income had increased and

ordered Father to pay Mother $10,000 in attorney fees and two-thirds of the guardian ad litem fees.

 In the Modification Judgment, the circuit court held Father in contempt for failing to pay

his share of the children’s previously incurred extracurricular and uninsured medical expenses.

Specifically, the circuit court found that Father owed Mother $6,352.03 for his share of the

extracurricular and uninsured medical expenses, that Father had the ability to pay these expenses,

and that he willfully and maliciously refused to pay them. The circuit court ordered Father to

purge himself of the contempt by mailing a payment of $200 per month, beginning January 15,

2019, to Mother until the amount was paid in full. The circuit court further ordered that Father’s

 4
failure to make such payments could result in his incarceration in the Platte County Detention

Center until such time as he purged himself of the contempt. Father appealed the Modification

Judgment to this Court on January 8, 2019, and we issued our ruling with respect to all matters

relating to the Modification Judgment on February 11, 2020, in Frawley I.2

 While Father’s appeal from the Modification Judgment was pending, Mother filed a motion

for a commitment order and a motion to execute on the Modification Judgment’s finding of

contempt on February 19, 2019. The circuit court held a hearing on Mother’s motion for a

commitment order on March 14, 2019. Father did not appear. The case was continued, and the

circuit court held another hearing on June 13, 2019, for a determination of Father’s ability to pay

and to permit Father the opportunity to demonstrate to the circuit court any change in his financial

circumstances since the date of the Modification Judgment. Father again did not appear.

 On October 7, 2019, the circuit court issued a writ of attachment and warrant of

commitment.3 In the warrant of commitment, the circuit court determined that Father was in

contempt of the orders in the Modification Judgment. The circuit court found that Father had the

financial ability to comply with the Modification Judgment’s provisions that he reimburse Mother

$6,352.03 for his share of the extracurricular and uninsured medical expenses by paying

installments of $200 per month. The circuit court issued the writ of attachment and warrant of

commitment to arrest and detain Father and confine him to the Platte County Jail until such time

 2
 In Frawley I, we determined that Father’s arguments concerning the validity of the circuit court’s contempt
findings were premature, and we declined to consider them. Frawley v. Frawley, 597 S.W.3d 742, 754 (Mo. App.
W.D. 2020). We noted that at the time the appeal was filed, the contempt order had not been enforced by the circuit
court’s issuance of an order of commitment or by Father’s actual incarceration. Id. We reversed and remanded the
modified child support award after finding that Father was entitled to a credit on the Form 14 calculation to reflect his
support obligation for his new daughter. Id. at 760. We affirmed the Modification Judgment in all other respects. Id.
 3
 In Father’s present notice of appeal, he states that this contempt order was enforced on December 3, 2019,
the date he was arrested. In Frawley II, this Court found that the circuit court enforced its contempt order on October 7,
2019, when it issued a writ of attachment and warrant of commitment directing law enforcement to arrest and detain
Father until he purged himself of the contempt. Frawley v. Frawley, 608 S.W.3d 771, 776 (Mo. App. W.D. 2020).

 5
as he purged himself of the contempt by paying $1,800, which was the balance owed for the

months of January 2019 through September 2019 pursuant to the contempt order. The circuit court

stated that, upon the posting of $1,800, Father “shall be released and that amount shall be sent to

the attorney of record for [Mother].” Father was arrested on December 3, 2019, and posted a bond

of $1,800. On December 5, 2019, Father filed a notice of appeal to the Missouri Supreme Court,

which transferred the appeal to this Court. We issued our ruling with regard to all issues relating

to this contempt civil commitment in Frawley II.

 While Father’s appeal as to his first contempt civil commitment was pending, Mother filed

a motion to release the $1,800 bond to her attorney as provided for in the writ of attachment and

warrant of commitment. Mother noticed up the motion for a hearing. Father filed a motion for

change of judge and recusal and noticed it up for hearing on the same day as Mother’s motion. On

December 17, 2019, the circuit court held a hearing on both motions, but Father again failed to

appear. The circuit court denied Father’s motion for change of judge or recusal and entered its

order releasing the $1,800 bond to Mother’s counsel.

 On December 27, 2019, Father filed yet another appeal from the December 17, 2019 order

releasing the bond, and this Court consolidated it with the appeal that was pending in Frawley II.

Mother filed motions to dismiss Father’s appeals from contempt civil commitment proceedings on

the basis that the notices of appeal were untimely filed because they were not filed within ten days

of the circuit court’s issuance of the writ of attachment and warrant of commitment on October 7,

2019. This Court agreed, and granted Mother’s motions to dismiss Father’s appeals. We found

that Father’s first notice of appeal from the contempt civil commitment was not filed until

December 4, 2019; therefore, it was untimely and was required to be dismissed. See Frawley II,

608 S.W.3d at 776. We also concluded that the contempt order became final when the circuit court

 6
issued the warrant of commitment on October 7, 2019, and the time for filing an appeal did not

restart when the circuit court ordered release of the bond to Mother’s counsel; therefore, the

remainder of Father’s appeal relating to the release of the bond, was untimely and was required to

be dismissed. Id. at 776-77.

 On December 30, 2019, Mother filed a second motion for commitment order and motion

to execute on judgment of contempt. Mother alleged that Father had again willfully failed and

refused to pay any sums of money to Mother toward his purge amount, outside of the initial $1,800,

which he did not voluntarily pay. On May 19, 2020, the circuit court held a hearing on Mother’s

request for a second warrant of commitment for Father, on Father’s amended motion for change

of judge and recusal, and on Mother’s motion for attorney’s fees and expenses on appeal. Father

again failed to appear at the hearing.

 On July 23, 2020, the circuit court entered its ruling ordering Father to reimburse Mother

$2,500 for fees and expenses incurred in response to his frivolous motions to recuse and change

judge and to pay Mother $10,000 for partial reimbursement of fees and expenses incurred in

defense of his appeal.

 Further, on July 23, 2020, the circuit court issued a Second Writ of Attachment and Warrant

of Commitment. The circuit court found that Father’s “deliberate defiance of the Modification

Judgment [was] intentional, willful and without good cause” and ordered law enforcement to arrest

and detain Father and confine him to jail until such time as he purged himself of his contempt by

paying $1,800, which was the balance owed for the months of January 2019 through July 2020 on

the children’s uninsured medical expenses and extracurricular activity expenses, for which the

circuit court found him in contempt in the Modification Judgment. The circuit court stated that,

 7
upon the posting of $1,800, Father “shall be released and that amount shall be sent to the attorney

of record for [Mother].”

 Finally, on July 23, 2020, to address the one issue remanded to the circuit court in this

Court’s mandate issued in Frawley I, the circuit court entered an amended judgment of

modification regarding child support reducing Father’s child support obligation to $396 per month.

 Father filed a notice of appeal with this Court on July 24, 2020; however, no docket fee

was paid. Thereafter, Father filed a notice of appeal with the Missouri Supreme Court on July 28,

2020. On September 11, 2020, the Missouri Supreme Court ordered the cause transferred to this

Court.

 Standard of Review

 The circuit court’s judgment in a civil contempt proceeding will not be disturbed on appeal

absent a clear abuse of discretion. LaBarca v. LaBarca, 534 S.W.3d 329, 335 (Mo. App. W.D.

2017). “An abuse of discretion occurs when the ruling is clearly against the logic of the

circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of

justice and indicate a lack of careful consideration.” Id. (internal quotation marks omitted). The

circuit court’s judgment in a civil contempt proceeding must be affirmed “‘unless there is no

substantial evidence to support it, unless it is against the weight of the evidence, unless it

erroneously declares the law, or unless it erroneously applies the law.’” Id. (quoting Murphy v.

Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). “We defer to the trial court’s credibility

determinations and its weighing of the evidence.” Id. (internal quotation marks omitted).

 8
 Analysis

 The law of the case, established by our prior holdings in Frawley I and Frawley II,

forecloses re-examination of Father’s Points I, II, III, and part of Point IV.4

 “The ‘law of the case’ is a rule which applies only when a reviewing court has already

decided an issue in a case.” Angoff v. Am. Fin. Sec. Life Ins. Co., 891 S.W.2d 833, 836 (Mo. App.

W.D. 1994). “The doctrine of law of the case governs successive appeals involving substantially

the same issues and facts. Under the doctrine, the appellate decision becomes the law of the case

in subsequent proceedings of the same cause. Its operation normally precludes re-examination of

issues decided in the original appeal.” Id. “The decision of the appellate court as to all points

presented and decided, either directly or by necessary implication, become the ‘law of the case’ so

as to generally preclude the re-litigation of any such matter.” State ex rel. Woodland Lakes

Trusteeship, Inc. v. Frawley, 554 S.W.3d 886, 890-91 (Mo. App. E.D. 2018). Moreover, “the

decision of a court is the law of the case for all points presented and decided, as well as for matters

that arose prior to the first adjudication and might have been raised but were not.” Snelling v.

Kenny, 491 S.W.3d 606, 613 (Mo. App. E.D. 2016) (quoting Walton v. City of Berkeley, 223

S.W.3d 126, 128-29 (Mo. banc 2007)); see also S.F.M.D. v. F.D., 477 S.W.3d 626, 636-37 (Mo.

App. W.D. 2015). “This Court has described the law of the case doctrine as ‘more than merely a

courtesy: it is the very principle of ordered jurisdiction by which the courts administer justice.’”

 4
 As to Point IV, Father’s notice of appeal states that he is appealing the Modification Judgment as executed
on December 3, 2019. We determined in Frawley II that Father’s appeal of the civil contempt order in the Modification
Judgment as enforced by the first writ of attachment and warrant of commitment was untimely. Frawley II, 608
S.W.3d at 776. That is the law of the case. However, Mother subsequently filed a second motion for commitment
order and motion to execute on judgment of contempt, and the circuit court issued a second writ of attachment and
warrant of commitment on July 23, 2020, again enforcing the contempt order and making it final for purposes of
appeal. See id. at 775. Father’s current notice of appeal was timely filed July 28, 2020. Therefore, we will address
the merits of the second enforcement of the contempt order in our analysis of Point IV, infra.

 9
Woodland Lakes Trusteeship, Inc., 554 S.W.3d at 891 (quoting Hankins v. Hankins, 864 S.W.2d

351, 353 (Mo. App. W.D. 1993)).

 A decision on a former appeal of the same case may be reconsidered under exceptional

circumstances, including “where the opinion is out of harmony with other decisions, where

incorrect principles of law were inadvertently or erroneously announced, where mistake of fact

was made, or where justice would not be done by adhering to the first opinion.” Id. “Appellate

courts also have discretion to consider an issue where there is a mistake, a manifest injustice, or

an intervening change of law.” Id. “The doctrine of law of the case is necessary to ensure

uniformity of decisions, protect the parties’ expectations, and promote judicial economy.” Empire

Dist. Elec. Co. v. Coverdell, 588 S.W.3d 225, 239 (Mo. App. S.D. 2019) (citing Walton v. City of

Berkeley, 223 S.W.3d 126, 129 (Mo. banc 2007)). “It can advance these goals only if it applies

nearly all the time, and discretion to disregard it is exercised only in rare and compelling situations

not found here.” Walton, 223 S.W.3d at 131.

 “‘[W]ithout the rule [of the law of the case] there would be no end of criticism, relitigation,

re-examination, and reformulation. In short, there would be endless litigation.’” Nance v. Maxon

Elec., Inc., 425 S.W.3d 926, 931 (Mo. App. W.D. 2014) (quoting Denny v. Guyton, 57 S.W.2d

415, 418 (Mo. banc 1932)). “‘There must be an end of litigation. The principle is not a rule of

convenience, but it is a principle of justice, so recognized, like the statute of limitations.’” Id.

(quoting Denny, 57 S.W.2d at 418). Father “‘cannot have multiple bites at the apple in attempting

to determine [these] issue[s] favorably.’” Coverdell, 588 S.W.3d at 240 (quoting Am. Eagle Waste

Indus., LLC v. St. Louis Cnty., 379 S.W.3d 813, 825 (Mo. banc 2012)). “Because [Father’s]

claim[s] of error amount[ ] to nothing more than an expression of disagreement with appellate

determinations that are the law of the case, his point[s] [are] without merit.” Id.

 10
 Point I

 In Father’s first point, he asserts that, after he filed motions for change of judge, the circuit

court judge erred in not recusing herself before entering the Modification Judgment. Father argued

this identical issue—that the judge erred in failing to recuse herself—in his eighth point on appeal

in Frawley I. In that appeal, Father’s arguments for recusal were based on adverse rulings made

by the circuit court during trial. We denied his point because the circuit court’s rulings did “not

establish a disqualifying bias or prejudice from an extrajudicial source which would require the

court’s recusal.” Frawley I, 597 S.W.3d at 759. We also rejected Father’s argument that the circuit

court exhibited a disqualifying bias or prejudice by “‘frequently threatening Father with attorney

fees.’” Id. We found that the record reflected that “the court merely reminded him that Mother

was incurring attorney’s fees as a result of his various litigation tactics, and that the court had the

authority to award attorney’s fees in its final judgment.” Id. We found no abuse of discretion in

the circuit court’s refusal to recuse itself. Id.

 Since we have already previously decided the issue presented in Father’s present Point I in

Frawley I, this point on appeal is controlled by the law of the case doctrine, and we will not

re-examine it in the present appeal. Accordingly, Point I is denied.

 Point II

 In Father’s second point, he contends that the circuit court erred in modifying the visitation

schedule and finding that unsupervised visitation with Father would endanger the children’s

physical health or impair their emotional development in that there was no expert testimony to

support that finding relating to the Modification Judgment.

 In Frawley I, Father’s first point on appeal challenged the admission into evidence of

exhibits offered by Mother pertaining to Father’s mental health status and treatment, including a

 11
business records affidavit and the associated psychological evaluation report prepared by the

court-appointed physician who conducted a psychological and parenting assessment of Father. Id.

at 749. This Court found that substantial evidence, separate and apart from the challenged report,

supported the circuit court’s finding that unsupervised visitation with Father would endanger the

children’s physical health or impair their emotional development. Id. at 750. We noted that the

Modification Judgment referred to the circuit court’s own observation of Father’s erratic,

aggressive, and troubling behavior during the course of the litigation, as well as in his interactions

with Mother, her fiancé, and the children. Id. We found that the circuit court had substantial

evidence, separate and apart from the challenged report, concerning Father’s mental health

condition and treatment, including “medical records of Father’s treatment by multiple other mental

health professionals, and Father’s and Mother’s testimony.” Id. at 751.

 Father also argued in his ninth point on appeal in Frawley I that the circuit court erred in

finding that its modified visitation schedule was in the best interests of the children. Id. at 759.

This Court found substantial support in the record for the circuit court’s endangerment/impairment

finding (addressed in the analysis of the first point in that appeal) necessary to impose supervised

visitation. Id. at 760. We found no abuse of discretion in the circuit court’s conclusion that the

modified visitation schedule was in the best interest of the children. Id.

 Since we have already previously decided the issues related to Father’s present Point II in

Frawley I, this point on appeal is controlled by the law of the case doctrine, and we will not

re-examine it in the present appeal. Accordingly, Point II is denied.

 Point III

 In Father’s third point on appeal, he argues that the circuit court erred in finding that the

guardian ad litem performed good and valuable legal services and in ordering Father to pay

 12
two-thirds of the guardian ad litem’s fees in its Modification Judgment. He contends that the

guardian ad litem failed to appropriately perform her duties.

 In Father’s sixth point on appeal in Frawley I, he argued that the circuit court erred in

ordering him to pay a portion of the guardian ad litem’s fees because she should have been

removed for failure to perform her duties. This Court found that the circuit court did not abuse its

discretion in refusing to remove the guardian ad litem. Id. at 757. This Court determined that the

record showed that the guardian ad litem:

 conducted a thorough and independent review of all the records and evidence in
 this case, communicated with both Mother and Father in person and through e-mail,
 and visited the minor children on multiple occasions. While Father suggests
 additional actions the Guardian ad Litem could have taken, the Guardian ad Litem’s
 failure to take these additional actions does not rise to the level of dereliction of
 duty that would justify this Court in finding that the circuit court abused its
 considerable discretion in leaving the Guardian ad Litem in place.

Id.

 Once again, since we have already previously decided the issues related to Father’s present

Point III in Frawley I, this point on appeal is controlled by the law of the case doctrine, and we

will not re-examine it in the present appeal. Accordingly, Point III is denied.

 Point IV

 In Father’s fourth and final point on appeal, he asserts that the circuit court erred in finding

that he was in contempt of the circuit court’s judgments below because there was no substantial

evidence that he willfully refused to comply with the judgment provisions related to

reimbursement for the children’s extracurricular and medical expenses.

 In the Modification Judgment, the circuit court found Father:

 to be in contempt of the Judgment and Decree of Dissolution of Marriage for
 willfully and maliciously failing to reimburse [Mother] for uninsured medical
 expenses and extracurricular expenses in the amount of $6,352.03. [Father] shall
 purge himself of this contempt by mailing a payment of $200.00 per month,

 13
 post-marked on or before on the 15th day of each month, beginning January 15,
 2019, to [Mother] until the amount in full has been paid. Failure by [Father] to
 make said payments to [Mother] could result in incarceration in the Platte County
 Detention Center until such time as he purges himself of this contempt.

In the Modification Judgment, the circuit court found that, though he was fully capable of doing

so, Father failed to satisfy his support obligations under the original Dissolution Judgment, and

threatened him with potential future incarceration if he failed to purge his contempt in the manner

specified.

 We first note that Father attempts to resurrect his argument relating to the circuit court’s

first warrant of commitment on October 7, 2019, but this Court has already addressed all issues

relating to that contempt proceeding in Frawley II. Hence, Father’s first contempt proceeding is

governed by the law of the case doctrine and we will not re-examine it again in the present appeal.

 On December 30, 2019, Mother filed a second motion for commitment order and motion

to execute on judgment of contempt, alleging that Father had willfully failed and refused to pay

any sums of money to Mother toward his purge amount, except for the $1,800, which he did not

voluntarily pay. On May 19, 2020, the circuit court held a hearing on Mother’s request for a

warrant of commitment for Father, on Father’s amended motion for change of judge and recusal,

and on Mother’s motion for attorney’s fees and expenses on appeal.

 “A party alleging contempt establishes a prima facie case for civil contempt when the party

proves: (1) the contemnor’s obligation to perform an action as required by the decree; and (2) the

contemnor’s failure to meet the obligation.” Ream-Nelson v. Nelson, 333 S.W.3d 22, 28 (Mo.

App. W.D. 2010) (internal quotation marks omitted). “The alleged contemnor then has the burden

of proving that person’s failure to act was not due to [his] own intentional and contumacious

conduct.” Id. (internal quotation marks omitted). At the hearing, Mother informed the circuit

court that she had received no payments from Father other than what had been released by the

 14
circuit court. Father did not appear at the hearing. Based on the evidence before it, 5 the circuit

court issued a second writ of attachment and warrant of commitment on July 23, 2020, again

enforcing the contempt order and making it final for purposes of appeal. Father’s current notice

of appeal was timely filed July 28, 2020.

 Father had the opportunity to present evidence to the circuit court at the May 19, 2020

hearing and to argue that his failure to purge himself of contempt pursuant to the Modification

Judgment was not due to his own intentional and contumacious conduct, but he failed to do so.

“By failing to raise an argument in the trial court, a party waives the issue on appeal.” Fogelsong

v. Joe Machens Auto. Grp., Inc., 564 S.W.3d 393, 398 (Mo. App. W.D. 2018). Father has waived

his argument that the circuit court erred in finding that he willfully and contumaciously refused to

comply with the Dissolution Judgment. Frankly, Father—an attorney—who repeatedly failed to

appear at court-ordered hearings, demonstrated his contumacious conduct through his willful

absences from these proceedings below.

 Viewing the evidence in accordance with our standard of review, the circuit court did not

err or abuse its discretion in finding Father in contempt of court for failing to comply with the

terms of the Dissolution Judgment and Modification Judgment because the finding was supported

by substantial evidence.

 Point IV is denied.

 5
 We note that there was substantial, compelling, and repeated evidence before the circuit court regarding
Father’s willful noncompliance to reimburse Mother for the children’s extracurricular and medical expenses that were
meticulously itemized by Exhibits 32 and 33 at the trial which led to the Modification Judgment. Likewise, Mother
also testified at this same trial as to her personal knowledge of the children’s extracurricular and medical expenses.

 15
 Rule 84.196 – Frivolous Appeal

 Rule 84.19 states, “[i]f an appellate court shall determine that an appeal is frivolous it may

award damages to the respondent as the court shall deem just and proper.” “While no hard and

fast rule as to what constitutes a frivolous appeal has been advanced and the issue must be

considered on a case-by-case basis, the test generally used is whether the appeal presents any

justiciable question and whether it is so readily recognizable as devoid of merit on the face of the

record that there is little prospect of success.” Biersmith v. Curry Ass’n Mgmt., Inc., 359 S.W.3d

84, 89-90 (Mo. App. W.D. 2011) (internal quotation marks omitted). “The issues presented on

appeal must be at least fairly debatable in order to avoid assessment of damages for frivolous

appeals.” Id. at 90. “The purpose of Rule 84.19 is to prevent congestion of appellate dockets with

unmeritorious cases and to compensate respondents for the time and cost of responding to a futile

appeal.” Id.

 We conclude that Father’s appeal is frivolous; for, there is not one argument that Father

has submitted on this appeal that was not barred by the law of the case doctrine or otherwise waived

due to Father’s failure to present any evidence to the circuit court below as to the willfulness of

his contumacious conduct in failing to adhere to the terms of the Dissolution Judgment and the

Modification Judgment.

 Therefore, we order the Father to reimburse Mother for her attorney’s fees incurred in

responding to this appeal. As the circuit court is better equipped to take evidence on this topic, we

remand this issue to the circuit court and direct the circuit court to issue an award of attorney’s

fees to Mother that it deems reasonable. See Smith v. Najafi, 584 S.W.3d 389, 401 (Mo. App.

W.D. 2019) (“Although appellate courts have the authority to allow and fix the amount of

 6
 All rule references are to I MISSOURI COURT RULES – STATE 2020.

 16
attorney’s fees on appeal, we exercise this power with caution, believing in most cases that the

trial court is better equipped to hear evidence and argument on this issue and determine the

reasonableness of the fee requested.”).

 Conclusion

 We affirm the circuit court’s rulings related to the enforcement of its judgments via civil

contempt proceedings.7 We remand this proceeding to the circuit court for the circuit court to

award Mother a reasonable sum of attorney’s fees she has incurred in responding to Father’s

appeal.

 /s/ Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Alok Ahuja and Karen King Mitchell, Judges, concur.

 7
 Mother moved to strike and dismiss Father’s appeal for numerous grounds that are now rendered moot as a
result of our ruling today. Hence, we deny Mother’s motions on appeal.

 17